# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK MACHADO, | Case No. 1:07-cv-00955-TAG |
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST CLAIMANT |
| Defendant. | |

Plaintiff Rick Machado ("Claimant") seeks judicial review of an administrative decision denying his claim for a period of disability, disability insurance benefits, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 et seq. Pending before the Court is Claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant timely filed his complaint on June 27, 2007 (Doc. 1), and his opening brief on May 9, 2008. (Doc. 19). The Commissioner filed his opposition brief on July 9, 2008. (Doc. 23). Claimant filed his reply brief on July 18, 2008. (Doc. 24).[1]

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge, and, by an order dated December 6, 2007, this action was assigned to the United States Magistrate Judge for all further proceedings. (Doc. 12).

---

[1] Claimant titled his opening brief as a motion for summary judgment, and the Commissioner titled his response brief as a cross-motion for summary judgment. Although briefs in Social Security cases previously were deemed summary judgment motions, for years this Court has designated the documents as "opening briefs," "responses," or "opposition" and "reply briefs." This memorandum decision and order continues that trend.

1

## JURISDICTION

On January 6, 2004, Claimant filed an application for Supplemental Security Income ("SSI") benefits. (Administrative Record ("AR") 66-69). After Claimant's application was denied initially and on reconsideration, Claimant and his counsel requested a hearing before an Administrative Law Judge ("ALJ"), and on May 31, 2006, appeared before ALJ Richard D. Wurdeman. (AR 253-275). On October 19, 2006, the ALJ issued a determination that Claimant was not disabled at any time through the date of hearing. (AR 20-28). The Appeals Council denied a request for review on April 27, 2007. (AR 9-12). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).[2]

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs filed by Claimant and the Commissioner, and will only be summarized here.

Claimant was born on November 19, 1979, and he was twenty-six years old at the time of the hearing. (AR 24, 66, 256). He testified that he completed the eighth grade and cannot read or write. (AR 257). Claimant is married with three children. (AR 264). Claimant testified that the last time he worked was in 2003 at U-Haul for approximately six months lifting trailers. (AR 257). Claimant indicated he left that job when his back problems prevented him from lifting trailers any more. (AR 258). Prior to that time, Claimant had worked in oil fields for four months, during which he lifted objects weighing as much as six hundred pounds. (AR 258). Claimant left that job because of the strain on his hands and recurring heat strokes. (AR 259). Claimant had also worked as a bus boy at Chili's restaurant for two months, but left that job when his back started to hurt and because he kept dropping glasses (AR 259-260).

Claimant testified that he had been born with a condition in which his fingers are webbed together. (AR 260). Claimant had undergone three operations on his hands but continued to have difficulty picking up small items, such as pennies, or maintaining his grasp on large items. (AR

---

[2]The initiation of an appeal in the district court must be commenced within sixty days of the Appeals Council's decision. 42 U.S.C. § 405(g). As mentioned, on June 27, 2007, Claimant timely filed this action. (Doc. 1).

260). Claimant's feet suffer from the same problem. (AR 261). He had undergone two operations on his feet, but they continue to get infected, creating problems for Claimant in walking. (AR 261). He testified he could walk as far as a block before needing to stop. (Id.). Whenever he lifts something, he experiences pain in his hands and his back. (AR 262).

Regarding his back, Claimant testified that he suffered a herniated disk and degenerative disk disorder of the L5 vertebra. (AR 262). His back problems began when he was involved in a motorcycle accident on October 4, 2003. (AR 267). Claimant rated his back pain as a six or seven on a scale of ten every day and is dull and constant. (AR 262). Claimant testified he did not take any medication, including over-the-counter medications for his back pain because "I don't like taking any medicine." (AR 263). Instead, Claimant performed stretching exercises in the shower. (Id.).

Claimant also testified that he could stand for twenty to thirty minutes before needing to sit down and that he could sit for approximately thirty minutes before needing to stand. (AR 265). He testified that he could not kneel, stoop or squat to the ground without pain. (Id.). Normally, he watches television and play video games during the day. (Id.).

Kenneth Ferra, the vocational expert, testified that, based on listening to Claimant's testimony and on his review of the record, he would classify Claimant's work as a trailer rental clerk as heavy and semi-skilled, his work in the oil fields as heavy and unskilled, and his work as a bus boy as medium and unskilled. (AR 270). In response to the ALJ's hypothetical question, i.e., whether any light and unskilled work existed in the regional or national economy for a person who could not bend, squat, crouch or crawl, who could not forcefully grip anything, and who has severe impairment in ability to engage in fine finger manipulation, Ferra replied that Claimant could work as a cleaner and that approximately 20,000 such jobs in California existed that were compatible with such limitations, and that ten times that number of such jobs existed nationally. (AR 271). Another such job was an agricultural grader, a sorting position, of which there were 8,000 such positions in California and 80,000 nationwide. (AR 272). Another such position is that of delivery person. (Id.). Ferra testified that in California there were approximately 18,000 such positions and 180,000

positions in the United States. (Id.).[3]

Normal Bussel, D.O., Ph. D, offered a written opinion that Claimant suffers from "chronic pain and congenital deformities of the hands and feet," and that his "disability will continue for the remainder of his life." (AR 207). Robert Shankerman, M.D., opined that Claimant had congenital webbed fingers and feet. (AR 209). Shankerman further opined that Claimant could stand and walk for less than two hours and could sit for less than two hours. (Id.). Regarding Claimant's hands and feet, Shankerman concluded that Claimant "has a congenital malformation that would prevent anyone from hiring him." (AR 226). He further opined regarding Claimant's back problems that "[h]is back pain is severe, incapacitating, and completely debilitating." (Id.).

On July 14, 2004, Keith Quint, M.D. reported Claimant's Residual Functional Capacity Assessment. (AR 158-165). In that assessment, Dr. Quint opined that Claimant retained the residual functional capacity to lift fifty pounds occasionally and twenty-five pounds frequently, to stand for six hours in an eight-hour day, and to sit for six hours in an eight-hour day. (AR 159). Dr. Quint also offered the opinion that Claimant was precluded from forceful gripping and grasping. (AR 161).

A psychologist, Kimball Hawkins, Ph.D., diagnosed Claimant at a borderline level of intellectual functioning, with some sub-test scores in the average range. (AR 242-246). The psychologist reported that Claimant had an adequate ability to "understand, remember, and carry out complete instructions," that his ability to perform activities within a schedule and maintain regular attendance was "good," his ability to complete a normal work day and work week without interruptions from psychologically based symptoms was "adequate," and his ability to respond appropriately to changes in the work setting was "good." (AR 245). Hawkins did not report any functional limitations secondary to Claimant's borderline intellectual functioning. (AR 246).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.

---

[3] Although the ALJ's findings indicated correctly that the evidence showed that 180,000 delivery jobs existed nationwide, the ALJ indicated that only 1,800 such jobs existed in California. (AR 26). The Court surmises that this figure was an inadvertent error, since the vocational expert testified that the number of such jobs in California was actually 18,000. (AR 272).

4

42 U.S.C. § 405(g). A court must uphold the Commissioner's decision to deny benefits, made through an ALJ, when the decision is based on the proper legal standards and is supported by substantial evidence. Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005). Substantial evidence is more than a mere scintilla but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989) (quotations omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Webb, 433 F.3d at 686, citing Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420 (1971). Moreover, such "inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" are accorded the same consideration as is substantial evidence as defined above. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (quotation and citation omitted).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Moreover, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that would support a finding of either disability or non-disability, the Commissioner's decision is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that claimant is not only unable to do her previous work but cannot, considering claimant's

age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

**A. The Initial Disability Determination**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled under Title XVI of the Act. 20 C.F.R. § 416.920. Step one determines if he is engaged in substantial gainful activities. If he is, benefits are denied. 20 C.F.R. § 416.920(a)(4)(I), (b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments that meet the duration requirements set forth in 20 C.F.R. § 416.909; i.e. the impairment(s) are expected to result in death or continuously lasted or be expected to last at least twelve months. 20 C.F.R. § 416.920a(4)(ii), (c). If the claimant does not have a severe impairment, a combination of impairments, or meet the duration requirement, the disability claim is denied. Id.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 416.920(a)(4)(iii), (d); 20 C.F.R. Pt. 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments and satisfies the duration requirement, the claimant is conclusively presumed to be disabled. 20 C.F.R. §§ 416.909, 416.920(a)(4)(iii), (d). If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from doing work performed in the past. If the claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 416.920(a)(4)(iv), (e); 416.960(b). If the claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), (f) and (g); 416.960(b) and (c). See Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987).

The initial burden of proof rests upon a claimant to establish that he "is entitled to the benefits claimed under the Act." Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971) (citations omitted). In terms of the five step sequential evaluation process, the Ninth Circuit has held that

"[t]he burden of proof is on the claimant as to steps one to four," while at the same time noting that an ALJ's "*affirmative duty* to assist a claimant to develop the record . . . complicates the allocation of burdens" such that "the ALJ shares the burden at each step." Tackett v. Apfel, 180 F.3d 1094, 1098 & n.3 (9th Cir. 1999) (italics in original). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

### B. Subsequent Review: Medical Improvement and Cessation of Disability Benefits

The Commissioner must follow different sequential steps exist to review whether, once the claimant has been found eligible for SSI benefits, his medical condition improves sufficiently to cease his disability payments. See 20 C.F.R. §§ 416.994(b)(5).[4] At the first step, the Commissioner determines whether the severity of the claimant's impairment(s) meet or equal one of the listed impairments acknowledged to preclude substantial gainful activity. 20 C.F.R. § 416.994(b)(5)(i); 20 C.F.R. Pt. 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant will remain eligible for disability benefits. 20 C.F.R. § 416.994(b)(5)(i). If the claimant does not satisfy step one, the Commissioner determines at step two whether the claimant's condition has improved, i.e., it is less severe. 20 C.F.R. § 416.994(b)(5)(ii). At step three, the Commissioner ascertains whether the medical improvement is related to an increase in the claimant's RFC "based on the impairment(s) at the time of the most recent favorable medical determination." 20 C.F.R. § 416.994(b)(5)(iii). If the Commissioner concludes that claimant has not experienced any medical improvement or that the medical improvement does not comply with § 416.994(b)(5)(iii), he continues to step four. 20 C.F.R. § 416.994(b)(5)(iv). At step four, if none of the exceptions under § 416.994(b)(3) or (b)(4) apply, the claimant's disability benefits will continue. Id.; see 20 C.F.R. §§ 416.994(b)(3) or (4). If no exceptions apply, the Commissioner continues to step five and

---

[4] This section of 20 C.F.R. § 416.994 outlines the steps that the ALJ is to address when the claimant applied for, and was granted, disability benefits under Title XVI of the Act. Regulation 20 C.F.R. § 404.1594 is almost identical to § 416.994, but applies to individuals previously granted benefits under Title II (disability insurance benefits) of the Act. Compare 20 C.F.R. § 416.994(b)(5) with 20 C.F.R. § 404.1594(f).

7

determine whether all of the claimant's combined impairments are severe and how they impact claimant's ability to function. 20 C.F.R. § 416.994(b)(5)(v). If the step five findings indicate that, considering the claimant's combined impairments, he can perform basic work, he no longer will be deemed disabled. Id. If, at step five, the Commissioner determines that claimant's (b)(5)(iii) RFC precludes him from working, the Commissioner continues to step six and assesses whether claimant's RFC, based on his current impairments, enables claimant to perform a job. 20 C.F.R. §§ 416.994(b)(5)(v) and (vi). At step seven, claimant's disability benefits will end if, in light of his RFC, age, education, and past work experience, he can do other work in the economy. 20 C.F.R. § 416.994(b)(5)(vii).

## ADMINISTRATIVE FINDINGS

At step one, the ALJ found that Claimant has not engaged in substantial gainful activity since his alleged onset date of December 28, 2003. (AR 27). At step two, the ALJ determined that Claimant suffers from severe impairments, including degenerative disk disease of the lumbar spine, congenital deformity of the hands and feet after surgical correction, and fine finger dexterity. (AR 27). However, the ALJ found that "Claimant's borderline intellectual functioning and alleged history of syncope do not represent severe impairments." (Id.).

At step three, the ALJ found that Claimant's severe impairments did not meet or equal "any listed impairment of Appendix 1, Subpart P of Social Security Administration Regulation No. 4." (Id.). The ALJ found that Claimant had the residual functional capacity ("RFC") "for a range [of] work at the light exertional level with preclusion from bending to the floor, squatting, crouching and crawling and forceful grasping." (Id.). The ALJ rejected as "not fully credible" Claimant's subjective complaints. (Id.).

The ALJ found that, given Claimant's RFC, he could not perform "any of his past relevant work," but also that the "vocational expert identified other jobs that exist in significant numbers in this and other regions of the United States that claimant can perform," including "cleaner, agricultural grader and delivery person." (Id.). Accordingly, the ALJ found that the Claimant was not under a disability within the meaning of the Social Security Act at any time through the date of the decision. (Id. at 27-28).

**ISSUES**

Claimant's Opening Brief raises the following two issues:

(1) The ALJ violated Social Security Ruling 00-4p and the vocational expert failed to offer a persuasive basis for deviating from the Dictionary of Occupational Titles and its companion publications; and

(2) The ALJ improperly found that Claimant's borderline intellectual functioning was not severe.

(Doc. 19, pp. 4-9).

This Court must uphold the Commissioner's determination that Claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

**DISCUSSION**

**A. The ALJ Did Not Err In Failing To Inquire Into The Vocational Expert's Purported Deviation From The Dictionary Of Occupational Titles**

Claimant first contends that the conclusions of the vocational expert regarding available jobs for someone possessing Claimant's physical limitations were inconsistent with the evidence of Claimant's restricted manual dexterity and that the case should be remanded to the ALJ for further inquiry and findings on this issue. (Doc. 19, p. 8). Respondent argues that there was no conflict between the Dictionary of Occupational Titles ("DOT") and the vocational expert's conclusions and that, even if there were such conflicts, any error was harmless because the vocational expert testified to the existence of a sufficient number of jobs in California for which someone with Claimant's dexterity limitations was qualified to perform. (Doc. 23, p. 5). For the reasons set forth below, the Court agrees with Defendant.

At the hearing, in response to the ALJ's hypothetical question, the vocational expert testified that for an individual with limitations consistent with Claimant's, i.e., who had the ability to perform light exertional work that precluded bending, squatting, crouching or crawling, forceful gripping, and who had a severe impairment in the ability to engage in fine finger manipulation, jobs existed in several areas. (AR 271). The expert testified that approximately 20,000 "cleaner" jobs existed in

California, and about 200,000 nationwide. (Id.). He testified that for the position of agricultural grader or sorter there were approximately 8,000 positions in California and 80,000 in the United States. (AR 272). He also testified that there were some 18,000 delivery positions compatible with the limitations posed in the ALJ's hypothetical. (Id.).

On cross-examination, the expert testified that the cleaner position may require bending, but not necessarily bending to the floor, and that kneeling can be substituted for squatting and crouching. (Id.). Furthermore, the expert reduced the number of available jobs in his estimate by twenty percent in order to ensure that the lack of fine finger dexterity was accounted for. (Id.).

Claimant argues that, as described in the DOT, the jobs of courier (i.e., delivery person), industrial cleaner, housekeeping cleaner, and agricultural sorter, each of which the vocational expert testified could be performed by someone with Claimant's limitations and each of which exists nationally and in California in significant numbers, all exclude anyone with finger dexterity in the bottom ten percent of the population. (Doc. 24, p. 5). Claimant argues that "the record taken as a whole demands the inference that Mr. Machado cannot perform even below average dexterity much less average dexterity," and that "[w]hile the quantity of fingering may not be enough to warrant an occasional classification, it does warrant the conclusion that it requires more than Rick Machado has." (Id.). Claimant argues that the case should be remanded "for facial consideration of the level of impairment and careful comparison to the data available with an adequate explanation for deviation from that date if warranted." (Id.).

Although Claimant attempts to frame his argument as challenging a perceived discrepancy between the evidence and the ALJ's findings, in essence, Claimant's argument is that the evidence in this record establishes, or *could have* established, something contrary to the ALJ's findings. As such, Claimant misconceives the nature of the review in which this Court engages. It is not within the scope of substantial evidence review to consider whether or not the evidence, if being considered for the first time de novo, establishes, or could have established, disability. Rather, it is the function of this Court to determine whether or not the ALJ's decision was made pursuant to correct legal standards, was supported by substantial evidence, and contained legally adequate findings.

///

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision to deny benefits, made through an ALJ, when the decision is based on the proper legal standards and is supported by substantial evidence. Webb, 433 F.3d at 686. As mentioned previously, substantial evidence is more than a mere scintilla but less than a preponderance. McAllister, 888 F.2d at 601-602.

After reviewing the entire record, the Court agrees with Defendant that substantial evidence supports the ALJ findings as to the availability of jobs for one with Claimant's limitations. The vocational expert offered his opinion as to the hypothetical posed by the ALJ for someone with Claimant's physical limitations. The expert testified that at least three job types existed in substantial numbers in California and nationwide for someone such as Claimant. While Claimant's briefs in this Court emphasize evidence of his limitations, rather than his abilities, and suggest scenarios where such limitations might preclude Claimant from or impede Claimant in the types of jobs testified to by the vocational expert, such an argument, as explained above, simply begs, rather than addresses, the primary question of whether the ALJ's findings that Claimant was not disabled were supported by substantial evidence.

A claimant's RFC is "what [he] can still do despite her physical, mental, nonexertional, and other limitations." Burger v. Astrue, 2008 WL 576335, *4 (C. D. Cal. 2008), citing Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001) and Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989); 20 C.F.R. § 416.945(a)(1); SSR 96-8p. When determining a claimant's RFC, the ALJ considers, inter alia, the individual's physical abilities and limitations, then the individual's RFC to perform work on a regular basis. 20 C.F.R. § 416.945(a)(4) and (a)(5)(ii)(b). "A limited ability to perform certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying . . . or reaching . . . may reduce your ability to do past work and other work." 20 C.F.R. § 416.945(a)(5)(ii)(b).

Here, substantial evidence was presented that Claimant's RFC would permit him to work in those categories of jobs identified by the vocational expert. That Claimant's limitations may preclude him from some small percentage of all such jobs is not the standard this Court must apply.

///

Regarding Claimant's allegation that the ALJ should have further developed the administrative record to delve into the purported disparity between the vocational expert's conclusions regarding available jobs and the evidence pertaining to Claimant's manual dexterity, the Court rejects this contention. An ALJ's duty to further develop the record is triggered when there is ambiguous evidence or when "the record is inadequate to allow for proper evaluation of the evidence." Mayes, 276 F.3d at 459-460; Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). This duty may require that the ALJ obtain additional information by, inter alia, contacting treating physicians, scheduling consultative examinations, or calling a medical expert. 20 C.F.R. §§ 416.912(e)-(f), 416.919a. The ALJ's decision may be set aside due to his failure to develop the record if a claimant can demonstrate prejudice or unfairness as a result of said failure. Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1991). Thus, the Ninth Circuit places the burden of proving prejudice or unfairness squarely on the claimant.

The ALJ did not err in failing to further develop the record. The administrative record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence and to make appropriate findings regarding job availability. There was ample testimony from the vocational expert detailing the types and numbers of jobs that could be performed by someone with Claimant's physical impairments, as well as how those ailments adversely, or contrarily, failed to, affect him from working or engaging in daily activities. (*See generally* AR).

Moreover, it was Claimant's duty to prove that he was disabled. See 42 U.S.C. § 423(d)(5)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"); accord Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990)("Clem has the burden of showing that he is disabled"). The Code of Federal Regulations explains:

> "...you have to prove to us that you are blind or disabled. Therefore you must bring to our attention everything that shows that you are blind or disabled. <u>This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis</u>. We will consider only impairment(s) you say you have or about which we receive evidence."

20 C.F.R. § 404.1512(a)(2000)(Emphasis supplied). Accord 20 C.F.R. § 404.1412( c)(2000)("You

must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say your are disabled").

Here, Claimant did not provide the ALJ with <u>specific</u> medical opinion testimony regarding his manual dexterity beyond what Defendant submitted and thus, in that regard, he failed to meet his statutory and regulatory burden to present evidence of his disability.[5] Claimant's position on review appears to be that if the ALJ took one more look at the issue, perhaps he would find that Claimant was in fact more severely limited in dexterity that was described in the ALJ's hypothetical question to the vocational expert. However, the question is whether sufficient evidence was presented to support the ALJ's findings *at the hearing that was actually conducted*, not whether, in a hypothetical hearing yet to be ordered or held, additional evidence might be elicited that could justify a modification of the ALJ's findings.

Finally, Claimant has not proven prejudice or unfairness. <u>Vidal</u>, 637 F.2d at 713. He was given a full and fair opportunity to litigate his disability. He does not, in the end, challenge the fairness of the process that took place so much as he challenges the outcome of those proceedings. The Court thus finds that the ALJ 's reliance on the testimony of the vocational expert was sufficient evidence to support his finding regarding the availability of jobs for someone with Claimant's disabilities. Accordingly, the Court concludes that the ALJ's findings and conclusions regarding Claimant's lack of disability should be affirmed.

### B. The ALJ's Determination That Claimant Did Not Have A Severe Mental Impairment Was Supported By Substantial Evidence

Claimant next contends that the ALJ erred at step two of the sequential evaluation process by finding that Claimant's borderline intellectual functioning "did not rise to the level of 'severe' under the regulations." (Doc. 19, p. 9). Defendant contends that the ALJ's is supported by substantial evidence and that the ALJ's determination is fully consistent with the evidence from the

---

[5]Claimant's best medical evidence, i.e., the opinion of Dr. Shankerman that Claimant's congenital condition "would prevent anyone from hiring him," and Dr. Bussell's opinion that Claimant's disability will continue for the rest of his life, were properly found by the ALJ to be "not fully credible." (AR 25). The ALJ pointed out that both opinions were "broad, non-specific opinions indicating permanent disability" that went beyond either expert's areas of expertise. (AR 25). The ALJ also correctly observed that the two Claimant's experts' opinions were directly at odds with Claimant's own testimony regarding his prior job experience. (<u>Id.</u>).

psychologist's report. (Doc. 23, p. 6). The Court agrees with Defendant.

As Defendant correctly observes, an impairment or combination of impairments is found "not severe" and a finding of "not disabled" is properly made at this step when medical evidence establishes that a claimant has only a slight abnormality which would have no more than a minimal effect on his or her physical or mental ability to perform basic work activities. Social Security Ruling No. 85-28.

Dr. Hawkins, in finding that Claimant's IQ ranged in different categories from a low of 76 to a high of 86, and that his "full scale" IQ was 79, made these observations about Claimant's mental condition:

> The results of the Mini Mental State Exam yield a score of 29 out of 30 points possible, which falls within the normal range. He was oriented to person, place, and time. He was able to recall three words immediately and three words after a delay. He was able to subtract serial 7's from 100 accurately. He is able to name objects and repeat simple sentences accurately. He can follow simple multi-step commands. He can read and write simple notes and messages. He is able to copy simple designs."

(AR 244).

Dr. Hawkins also made the following observations:

> "[Claimant's] ability to understand, remember, and carry out complex instructions is adequate. His ability to understand, remember, and carry out simple instructions is good. His ability to perform activities within a schedule and maintain regular attendance is good. His ability to complete normal work day and work week without interruptions from psychologically based symptoms is adequate. His ability to respond appropriately to changes in the work setting is good. His ability to manage his own money is considered to be good."

(AR 245).

Based upon Dr. Hawkins observations, the ALJ found that Claimant's mental condition was not "severe":

> Dr. Hawkins diagnosed borderline level of intellectual functioning (with some subtest scores in the average range). Dr. Hawkins opined no functional limitations secondary to borderline intellectual functioning. Claimant's medical records also indicate a history of syncope in 2000. However, all tests were negative. Exhibit 9F. In addition, there is no indication in the medical records of recurrence and claimant is currently driving without any medical restriction. As such, I find that claimant's borderline intellectual functioning and alleged

history of syncope do not represent severe impairments.  See Bowen v. Yuckert, 482 U.S. 137 (1987); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) and Social Security Ruling 85-28 (An impairment may be found not severe when there is only a "slight abnormality" arising from a medically determined impairment that has "no more than a minimal effect" on one's ability to perform basic work activities.).

(AR 24) (Emphasis supplied).

Thus, Claimant's functioning was average to borderline in all categories, he was able to perform activities and engage in mental exercises necessary to secure employment, and Dr. Hawkins did not believe there were any functional limitations secondary to Claimant's borderline intellectual functioning.  (AR 244, 246).  In short, there was nothing in Dr. Hawkins report that established that Claimant's mental limitations were severe.  Certainly, this evidence was "more than a scintilla," McAllister, 888 F.2d at 601-602, and comprises "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Webb, 433 F.3d at 686.  As such, Dr. Hawkins' expert opinion constitutes substantial evidence on which the ALJ based his finding that Claimant's borderline intellectual functioning was not severe, i.e., that it "would have no more than a minimal effect on [Claimant's] ability to word."  S.S.R. 85-28; Yuckert v. Bowen, 841 F.2d at 306.

As mentioned, it is the Claimant's duty to prove that he is disabled.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"); 20 C.F.R. §§ 404.1512(a) & (c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled.").

Here, as Defendant correctly points out, Claimant presented no medical evidence that his borderline intellectual functioning caused more than minimal functional limitations.  (Doc. 23, p. 7).  Claimant argues that he cannot read and write and that he had only an eighth grade education.  ((Doc. 19, p. 10).  Claimant does not specifically demonstrate how such limitations, even if true, would impact the conclusion that his mental condition was not severe or that such limitations would have more than a minimal effect on Claimant's ability to work at the jobs listed by the vocational expert.

Moreover, in contrast to Claimant's assertions, Dr. Hawkins noted that Claimant could read and write simple notes and messages and Claimant himself testified that he could read the King James version of the Bible. Such evidence, coupled with Dr. Hawkins' observations and opinions, directly supports the ALJ's findings.

Additionally, Claimant's prior work experience involving a trailer rental clerk, a semi-skilled job, was more demanding than the unskilled positions about which the vocational expert testified. Thus, the fact that Claimant could perform semi-skilled work necessarily suggests that he could perform the unskilled work outlined by the vocational expert unless his mental condition had worsened. However, there was no evidence that Claimant's mental condition had worsened; thus, Claimant's prior work history contradicts his claim now that his borderline intellectual functioning was severe.[6]

The Court agrees with Defendant that Claimant's reliance on <u>Vincent v. Apfel</u>, 264 F.3d 767, 770 (8th Cir. 2001), is misplaced. (Doc. 23, p. 7). In <u>Vincent</u>, the claimant testified that he heard voices, had visions, and regularly took psychotropic medications in order to function. 264 F.3d at 768. The ALJ found that, although Vincent's schizophrenia was severe, it was not of listing-level severity based on his regular counseling, medication, and daily activities, as well as based on a consulting psychologist's opinion that claimant's symptoms were well-controlled by medication and that his schizophrenia was in remission. <u>Id.</u> The district court upheld the ALJ's decision. On appeal, the Eighth Circuit reversed the district court, holding that the ALJ's findings that claimant suffered no mental limitations were inconsistent with his extensive and well-documented treatment record. <u>Id.</u> at 770. In so doing, the Court of Appeals cited <u>Lucy v. Chater</u>, 113 F.3d 905, 909 (8th Cir. 1997),

---

[6]Claimant does not argue that his mental impairment rises to the level of a Listing under 12.05C. In a colloquy at the conclusion of the hearing, the ALJ asked Claimant's counsel if he thought a psychological examination was needed and counsel replied, "I really don't believe so." (AR 274). The ALJ queried again, and counsel responded: "I mean, I would be one that would ask for that if he–if we're looking at 12.05C–..." Then counsel added, "Which, you know, if his IQ is below 69, but doesn't that also indicate that I have to prove that six months prior or years prior on the 12.05C?" (<u>Id.</u>). The ALJ indicated that one of the verbal IQ scores for Claimant from a school report was 72, "which is close." (<u>Id.</u>). Counsel indicated he would not "have any problems then with a psychological," and that if the test showed an IQ low enough, then "that would meet 12.05C." (<u>Id.</u>). However, as discussed above, the testing did not show Claimant to be below, or even close to, 69 in any category, and hence, Claimant has not raised a claim that the ALJ erred in not finding that his mental disability rose to the level of a listing of mental retardation in 12.05C.

also relied upon by Claimant here, for the proposition that even if a claimant's borderline intellectual functioning was not of listing-level severity, the claimant was entitled to have a vocational expert consider this condition along with his other impairments to determine how it impacts upon his RFC. Id.

As should already be apparent, the facts in Vincent and Lucy differ markedly from those of the instant case. Here, Claimant has not presented any records whatsoever of his treatment for his mental disabilities. Thus, in contrast to Vincent, there can be no medical history in this case that is contrary to the ALJ's findings regarding the severity of the claimant's mental disability since none was submitted.

Likewise, Lucy is unavailing. In that case, the ALJ, relying on the Medical-Vocational Guidelines alone, found that the only restriction on claimant's ability to perform a full range of sedentary work was his borderline intellectual functioning, but that this restriction did not substantially limit claimant's capacity to perform a full range of sedentary work. Lucy, 113 F.3d at 907. The Eighth Circuit reversed the district court's affirming of the ALJ's ruling, holding that borderline intellectual functioning "is a significant nonexertional impairment that must be considered by a vocational expert." Id.

First, the Eighth Circuit's decisions are not binding on this Court. Second, Claimant relies upon a single line from the Eighth Circuit's opinion, i.e., that borderline intellectual functioning "is a significant nonexertional impairment that must be considered by a vocational expert," to then urge this Court to adopt, apparently for the first time in this Circuit, a bright line rule that whenever a claimant has such a mental impairment the ALJ cannot make findings regarding RFC without first presenting such a mental impairment to the vocational expert for his or her consideration in determining Claimant's job prospects. The Court declines Claimant's invitation to re-write Circuit case law on this point.

It appears from the transcript of the hearing that the vocational expert, who had listened to Claimant's entire testimony, including his testimony regarding his mental condition, was fully aware of Claimant's limited ability to read and write. It further appears that the only reason the ALJ even

suggested conducting a psychological examination of Claimant was because of one Verbal IQ score from a school record that was sufficiently low that subsequent tests might show that Claimant's disability rose to the level of a listing. Indeed, even Claimant's attorney was not enthusiastic about the need for a psychological examination until the ALJ encouraged it. Ultimately, Dr. Hawkins' report did not reveal <u>any</u> IQ levels close to the verbal IQ score of 72 reported by the ALJ in Claimant's school records. Hawkins' report carefully explained how alert, responsive, and capable Claimant was mentally during the testing procedure. As mentioned, Hawkins found no functional limitations secondary to Claimant's mental impairment. On those facts, the Court is unwilling to articulate a bright line rule that an ALJ must always obtain the opinion of the vocational expert regarding the effect, if any, of a claimant's borderline intellectual functioning on his RFC.

Nor is a remand for further findings required. In a Social Security case, an ALJ is obligated to fully and fairly develop the record even if the claimant is represented by counsel. <u>Celaya v. Halter</u>, 332 F.3d 1177, 1183 (9th Cir. 2003). This duty may require that the ALJ obtain additional information by, <u>inter alia</u>, contacting treating physicians, scheduling consultative examinations, or calling a medical expert. 20 C.F.R. §§ 416.912(e)-(f), 416.919a; <u>Armstrong v. Commissioner</u>, 160 F.3d 587, 590 (9th Cir. 1998). The ALJ's is not obligated to develop the record further, however, unless the evidence is ambiguous or "the record is inadequate to allow for proper evaluation of the evidence." <u>Mayes</u>, 276 F.3d at 459-460.

In the instant case, the ALJ was not obligated to further develop the record with respect to Claimant's borderline intellectual functioning given that there were sufficient, unambiguous records to enable him to evaluate the evidence and render a proper decision. Dr. Hawkins' observations and opinions have been cited in detail above and the Court will not revisit them. The fact that Claimant may point to additional evidence the diverges in some respects from Dr. Hawkins conclusions or that could support a different conclusion is truly irrelevant to the question of whether the ALJ's findings are supported by substantial evidence or whether additional findings and inquiries need to be made. As mentioned previously, the review that this Court undertakes is not to discern some evidence that might have tended to support a conclusion contrary to the ALJ's; rather, the Court is to review the

reasoning of the ALJ to determine whether the ALJ's decision was rendered pursuant to appropriate legal standards and was supported by substantial evidence. <u>Batson v. Commissioner of Social Security Administration</u>, 359 F.3d 1190, 1196 (9th Cir. 2004).

The ALJ addressed the records that he deemed credible in determining that Claimant's mental and intellectual impairments were limited to borderline intellectual functioning that would not prevent him from working. (AR 24). In the absence of testimony or ambiguous evidence supporting an opposite finding, it would be unduly onerous to require an ALJ to develop the record to ascertain whether a claimant's ailments possibly satisfied any of the listings, or to explain why the evidence indicated that the claimant did <u>not</u> meet a Listing. <u>See</u> <u>e.g.</u>, <u>Parks v. Sullivan</u>, 766 F. Supp. 627, 635 (N.D. Ill. 1991)("the ALJ does not need to meet the impossible burden of mentioning *every* piece of evidence")(emphasis in original); <u>see also</u> <u>Orcutt v. Barnhart</u>, 2005 WL 2387702, *8 (C.D. Cal. 2005)(same).

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court finds no error in the ALJ's analysis, which was based on proper legal standards and supported by substantial evidence. Accordingly, this Court HEREBY ORDERS as follows:

1. Claimant's Social Security complaint (Doc. 1) is DENIED; and

2. The Clerk of the Court is DIRECTED TO ENTER judgment for Defendant Michael J. Astrue, Commissioner of Social Security, and against Claimant Rick Machado and close this case.

IT IS SO ORDERED.

Dated: **March 23, 2009**                  /s/ Theresa A. Goldner
                                                        UNITED STATES MAGISTRATE JUDGE